**1246**

UNITED STATES of America,
Plaintiff,

v.

THOMAS JEFFERSON CORPORATION,
Defendant.

Civ. A. No. 69-C-12-C.

United States District Court,
W. D. Virginia,
Charlottesville Division.

Jan. 8, 1970.

Leigh B. Hanes, Jr., U. S. Atty., Roanoke, Va., for the United States.

Edward R. Slaughter, Jr., McGuire, Woods & Battle, Charlottesville, Va., for defendant.

*Denial of Motion to Dismiss*

DALTON, Chief Judge.

On June 21, 1966, Aaron J. Ezickson slipped and fell in the Barracks Road Shopping Center, Charlottesville, Virginia. Ezickson sustained injuries which allegedly were caused by the negligent maintenance of the shopping center. After more than six months passed, Ezickson, a resident of New York, instituted a suit against defendant, the owner of the shopping center, in the Supreme Court of the State of New York to recover for his injuries. The defendant challenged the jurisdiction of the New York Court, and the trial court ruled in favor of Ezickson. Defendant noted an appeal to the Appellate Division, and the action is still pending in that court. There has been no trial on the merits.

Plaintiff instituted this action under the Medical Care Recovery Act, 42 U.S. C. §§ 2651–2653, to recover the reasonable cost of caring for Ezickson in the Veterans Administration Hospital in New York City. Seeking dismissal, defendant asserts that under the Medical Care Recovery Act the plaintiff is limited to intervention in the New York suit. The issue properly stated is: Whether or not the United States has a right, under the Medical Care Recovery Act to initiate an independent action against an alleged tortfeasor, when an action, instituted by the injured party more than six months after the first day of care

and treatment by the United States, is pending? The issue has not been previously determined. This fact makes the language of the act[1] and its legislative history particularly important.

The test case of United States v. Standard Oil Co. of California, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), led to the enactment of the Medical Care Recovery Act. The case was commenced by the government in an effort to recover the costs of hospitalization and soldier's pay expended by it as the result of the injury of a soldier hit by a truck negligently operated by a third party. The Supreme Court refused to recognize the government's right to bring this action. It held that the matter was one for consideration by Congress and not for the courts. Following this decision, Congress enacted the Medical Care Recovery Act. The Act enables the government to recover from negligent third persons the cost of medical care furnished to designated classes of beneficiaries. The act operates to eliminate bonus recoveries to injured federal beneficiaries or windfall savings to tortfeasors or their insurance carriers, and to return vast sums to the federal coffers.

■■ The original draft of the bill placed the government in the position of a mere subrogee of the claim. The bill as finally revised has the effect of conferring on the government an independent right of action and freeing its right of subrogation from the vagaries of state law. The cases have uniformly recognized that the government has an independent cause of action under this act. United States v. Merrigan, 389 F. 2d 21 (3rd Cir. 1968); United States v. Fort Benning Rifle and Pistol Club, 387 F.2d 884 (5th Cir. 1967); United States v. Winter, 275 F.Supp. 895 (E.D.Pa. 1967). In United States v. Merrigan, *supra*, 389 F.2d at 23 and 24, the court stated:

Subsection (a) of the Medical Care Recovery Act unmistakably confers on the government what the congressional reports describe as an 'independent right of recovery' from the tortfeasor of the reasonable value of the care and treatment it furnishes to the injured person. What is involved here is the construction of the Act's remedial or procedural provisions. These are not to be construed strictly against the government, but rather in

1. 42 U.S.C. § 2651 states in part:

(a) In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person * * * to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished. The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, as

appropriate, to assign his claim or cause of action against the third person to the extent of that right or claim.

(b) The United States may, to enforce such right, (1) intervene or join in any action or proceeding brought by the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, against the third person who is liable for the injury or disease; or (2) if such action or proceeding is not commenced within six months after the first day in which care and treatment is furnished by the United States in connection with the injury or disease involved, institute and prosecute legal proceedings against the third person who is liable for the injury or disease, in a State or Federal court, either alone (in its own name or in the name of the injured person, his guardian, personal representative, estate, dependents, or survivors) or in conjunction with the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors.

aid of the substantive right which the statute has created.

Here, also, the court is concerned with the construction of the procedural aspects of the act. But even strictly construing the language of 2651(b) against the government, the court cannot find justification for the defendant's position.

Under 2651(b) the "United States may * * * if such action or proceeding [the injured party's is not commenced within six months after the first day in which care and treatment is furnished by the United States in connection with the injury or disease involved, institute and prosecute legal proceedings against the third person who is liable for the injury or disease, in a State or Federal court, *either alone* * * * *or* in conjunction with the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors." (emphasis added) The language of the statute is not equivocal and clearly establishes the right in the government to sue separately after the six month period. Contrary to what the defendant argues, the court can find no hidden restraints on the right.

The defendant argues that there is an undue burden on it to defend both suits, that there is a duplication of court effort and expense, and that there is the possibility of inconsistent results. None of these arguments has been persuasive with this court.

■ Many times where there is only a single cause of action *in personam*, a plaintiff will institute suit in both the state and federal courts. The rule has become generally established that where the action first brought is *in personam* and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded. Kline v. Burke Constr. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922). The defendant in that situation is required to defend a *single* cause of action in two different courts. Our defendant is being compelled to defend *two separate* causes of action in two different courts. If one cause of action may be brought in two different courts, *a fortiori* two separate causes of action may be brought in two different courts.

Had the government instituted suit first after the six month period, would the bringing of a suit by the injured party cause the government's suit to be dismissed? I think not. Yet, the burden, the duplication, and the possibility of inconsistency would be the same in that suit as in the present case. The court does not think the two situations merit different treatment and no distinctions will be attempted.

The court finds further justification for today's decision in defendant's own actions. In the New York courts defendant is seeking to have the case dismissed for lack of jurisdiction. Thus, the defendant is arguing in each court that the other is the proper forum for the suit. Should defendant prevail, both suits would be dismissed. The court will not allow this tactic to subvert the government's cause of action.

■ The defendant, citing 1A Moore's Federal Practice § 0.227, asks that this suit be dismissed under the "well settled doctrine that the Federal Court has the power to enjoin proceedings where there is a multiplicity of suits." 1A Moore's Federal Practice § 0.227 states in part, "As a general rule, the mere existence of a multiplicity of actions at law is normally not sufficient to invoke the equitable jurisdiction of the federal court. But the presence of other equitable factors may warrant equitable relief." The defendant has not shown and the court cannot find "other equitable factors" which warrant equitable relief.

For the foregoing reasons the defendant's motion to dismiss is denied.

The clerk is directed to send a certified copy of this order to counsel of record.