UNITED STATES of America,
Appellant,

v.

James F. MERRIGAN and James F. Merrigan, Jr., Defendants and Third-Party Plaintiffs,

v.

Thomas J. McKINNEY, Third-Party Defendant.

No. 16657.

United States Court of Appeals Third Circuit.

Argued Nov. 24, 1967.

Decided Jan. 16, 1968.

---

Morton Hollander, Chief, Appellate Section, Dept. of Justice, Civil Division, Washington, D. C. (Carl Eardley, Acting Asst. Atty. Gen., David M. Satz, Jr., U. S. Atty., Jonathan Kohn, Asst. U. S. Atty., Howard J. Kashner, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Robert M. Hanlon, Hanlon, Argeris & Amdur, Asbury Park, N. J., for appellees.

Before HASTIE, FREEDMAN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

This is an action by the United States of America under the Medical Care Recovery Act (76 Stat. 593, 42 U.S.C. §§ 2651–2653), to recover the reasonable value of hospital, medical and surgical care amounting to $4,641 furnished by the Veteran's Administration to a veteran injured as the result of defendant's negligence. The veteran had instituted his own action against the tortfeasor within six months after the government first furnished the medical care, and his action had already gone to trial and judgment before the government brought its action.[1] The district court granted defendant's motion for summary judgment and dismissed the government's action on the ground that its only remedy under the Act was intervention or joinder in the private action, a remedy that no longer was available.

The Medical Care Recovery Act was passed following a report by the Comptroller General of the substantial moneys expended by the government for medical care and treatment of persons injured by the negligence of others, which it was unable to recover from the tortfeasors under the decision in United States v. Standard Oil Company, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947). The Supreme Court there denied the government's claim for the recovery of the value of medical care it furnished to a serviceman injured by the negligence of the defendant, saying that the decision to create such a liability was one for Congress to make as a matter of federal fiscal policy and not appropriate for judicial creation. 332 U.S. at 314–316, 67 S.Ct. 1604. The Court rejected the effort to sustain the government's claim under state-created doctrines of subrogation, on the ground that the claim was not one of subrogation but was essentially an independent claim not depend-

[1]. The United States first rendered care to the veteran on February 3, 1964. He commenced his suit against defendant in the New Jersey Superior Court on February 17, 1964, and in May of 1965 obtained a judgment of $11,414.75. The government instituted the present action on July 30, 1965.

ent on the rights of the injured serviceman. 332 U.S. at 304, n. 5, 67 S.Ct. 1604.

The principal section of the statute is § 2651. Subsection (a) creates a "right" in the United States "to recover" from the tortfeasor the value of medical care it has furnished the injured person and provides that the government shall be subrogated to any claim of the injured person against the tortfeasor to the extent of the value of the care and treatment it has furnished. Subsection (b) prescribes the procedure for enforcement of the government's right of recovery. Since our problem involves the construction of these provisions, we must set them out in full:

"§ 2651. Recovery by the United States.

"(a) Conditions; exceptions; persons liable; amount of recovery; subrogation; assignment.

"In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person (other than or in addition to the United States and except employers of seamen treated under the provisions of section 249 of this title) to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treat-

ment so furnished or to be furnished. The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, as appropriate, to assign his claim or cause of action against the third person to the extent of that right or claim.

"(b) Enforcement procedure; intervention; joinder of parties; State or Federal court proceedings.

"The United States may, to enforce such right, (1) intervene or join in any action or proceeding brought by the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, against the third person who is liable for the injury or disease; or (2) if such action or proceeding is not commenced within six months after the first day in which care and treatment is furnished by the United States in connection with the injury or disease involved, institute and prosecute legal proceedings against the third person who is liable for the injury or disease, in a State or Federal court, either alone (in its own name or in the name of the injured person, his guardian, personal representative, estate, dependents, or survivors) or in conjunction with the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors." [2]

Subsection (a) of the Medical Care Recovery Act unmistakably confers on the government what the congressional reports describe as an "independent right of recovery" from the tortfeasor of the reasonable value of the care and treatment it furnishes to the injured person.[3] What is involved here is the construction of the Act's remedial or

---

2. A third subsection, not here relevant, 42 U.S.C. § 2651(c), creates an exception to the applicability of the statute for veterans' service-connected injuries.

3. H.R.Rep. No. 1534, 87th Cong., 2d Sess., pp. 2–4 (1964), U.S.Code Congressional

and Administrative News, p. 2637; United States v. Fort Benning Rifle & Pistol Club, 387 F.2d 884 (5 Cir. Nov. 27, 1967).

procedural provisions. These are not to be construed strictly against the government, but rather in aid of the substantive right which the statute has created. See Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). Congress did not intend to limit the primary right of recovery in specifying the right of subrogation in aid of it. This is inherent in the provision itself, for the grant of an equitable remedy of subrogation is not from its nature a limitation on a right of action. The legislative history of the Act explains why the provision for subrogation appears in subsection (a), instead of subsection (b) dealing with enforcement procedure, where it would be more appropriate. The inter-agency committee which drafted the original bill did not create an independent right of recovery in the government, but contented itself with meeting the Supreme Court's holding that without Congressional authorization the government had no right of subrogation, and left the dimensions of that right dependent upon state law doctrines of subrogation.[4] The bill was amended to confer on the government an independent right of action and to free its right of subrogation from the vagaries of state law. This was accomplished by adding immediately before the provision regarding subrogation in subsection (a) a new provision that the United States "shall have a right to recover from said third person the reasonable value of the care and treatment so furnished". The right of recovery was thus conferred on the government and subrogation was made one of the remedial consequences of the government's right, a subsidiary equitable remedy, which did not limit the primary right.[5]

The question then remains whether subsection (b), written in permissive rather than mandatory terms, cuts down the government's independent right of action established in subsection (a). The purpose cannot have been to destroy entirely the government's right to bring an independent suit. There is no contention that the right to sue does not clearly exist if the injured person fails to sue the tortfeasor within six months of his receipt of medical care, for the statute literally declares that in such a case the government may bring its action "alone", if it so chooses. Equally, the injured party who has waited beyond six months may still sue the tortfeasor even if in the interim the government has already brought its own action for its claim. The history of the statute as well as its provisions make it clear beyond question that it is not to be read as limiting in any manner the rights of the injured person against the tortfeasor.[6] If the government sues alone after six months have gone by, the injured person's action brought thereafter may run concurrently with it, for subsection (b) provides for that event, stating that after six months the government may sue "either alone * * * or in conjunction with the injured * * * person." This is no more than recognition of the realistic fact that a court would normally consolidate the two parallel actions involving the same defendant on a claim of liability for the same tortious act. Thus the

---

4. H.R. No. 298, 87th Cong., 1st Sess. (1961). See Letter from Byron R. White, Deputy Attorney General, to Hon. Emanuel Celler, Chairman of House Comm. on Judiciary, Aug. 1, 1961 (reprinted S.Rep. No. 1945, 87th Cong., 2d Sess., U.S.Code Cong. & Admin.News, pp. 2643–44), in which one of the drafters of the original bill sets out the nature of the government's right.

    For example, in Pennsylvania, the injured party himself could not recover for treatment provided by a Veteran's Administration hospital and thus under the bill as originally drafted the United States could not recover in cases in which the injured person's right accrued under Pennsylvania law. See Feeley v. United States, 337 F.2d 924, 12 A.L.R.3d 1228 (3 Cir. 1964). See generally, Annot., 7 A.L.R.3d 516 (1966).

5. Supra, n. 3; United States v. Greene, 266 F.Supp. 976 (N.D.Ill.1967); Tolliver v. Shumate, 150 S.E.2d 579 (W.Va.1966).

6. See, e. g., 42 U.S.C. § 2652(c); H.R. Rep. No. 1534, 87th Cong., 2d Sess., at 2.

fundamental purpose of subsection (b) must be something quite different from the prevention of the maintenance of two concurrent actions against the tortfeasor, one by the government for the recovery of the value of medical care and treatment it has furnished and the other by the injured person for the damages inflicted on him.

Similarly, there is no time limitation which restricts the government's right to intervene or join in a suit brought by the injured person, and thus it may become a party to his action even though he did not bring it until the six months had expired. It would be anomalous to say that although the government may intervene in his action brought within six months or after six months have gone by, it may not bring its own action which may be consolidated with his, if he has brought his action within six months.

The truth of the matter is that the six months provision is an incongruous residue left in the statute from the earlier intention to provide to the government no more than a derivative right of subrogation. The Comptroller General had suggested that the government's right of subrogation be postponed for a specified period to allow the injured person to prosecute his claim.[7] As the statute ultimately emerged from Congress the government's right was not derivative, but an independent right of action.

■ We are thus compelled to the view that the six months provision must be given the most limited effect which the statutory language permits. In this view it can mean only that the government must wait for six months to afford the injured person the opportunity to bring his action first. When he does sue, the government may intervene at any time, even after the six months period has expired. It may intervene even though the injured person's action was brought after the six months period had run. This leads inescapably to the conclusion that although the government may not bring its independent action until six months have gone by, that period does not mark a kind of partial statute of limitations against the assertion of its independent right of action. It may at any time after six months bring its action even if the injured person has already brought suit for his damages within the six months period.

Any other construction would produce unacceptably absurd results. The injured person might settle an action which he commenced within the six months period, before the government had the opportunity to intervene. Literally read subsection (b) in such a case would bar the government from bringing its own action because the condition of a failure by the injured person to commence an action within six months would not be met. As the court held in United States v. Wittrock, 268 F.Supp. 325 (E.D.Pa. 1967), such a suit and settlement may not be permitted to bar the government's subsequent action.[8] We approve that decision in preference to United States v. York, 261 F.Supp. 713 (W.D.Tenn.1966), holding to the contrary, which is now pending on appeal.[9] There is no rationale in the statutory purpose for distinguishing a case in which the injured person's suit has gone to judgment instead of being settled.

**7.** See Letter from Joseph Campbell, Comptroller General, to Hon. Emanuel Celler, Chairman of House Committee on the Judiciary, S.Rep. No. 1945, 87th Cong., 2d Sess., U.S.Code Cong. & Admin.News, p. 2652 (1962). The letter cites Longshoremen's & Harbor Workers' Compensation Act, § 33(b), 33 U.S.C. § 933(b) which provides that an injured employee's claim against third party is deemed assigned to his employer if the employee fails to bring suit within six months after being awarded compensation under the Act.

**8.** See also Tolliver v. Shumate, 150 S.E. 2d 579 (W.Va.1966); United States v. Guinn, 259 F.Supp. 771 (D.N.J.1966), holding that a settlement between the injured person and the tortfeasor does not bind the government, and United States v. Ammons, 242 F.Supp. 461 (N.D. Fla.1965), holding that absent an assignment of claim, the government has no claim against the proceeds of a settlement.

**9.** A dictum in United States v. Bartholomew, 266 F.Supp. 213 (W.D.Okla.1967), cites the York case with approval.

There is another reason why the government's independent right of action may not be destroyed because the injured person has promptly sued. There is no provision in the statute for notice to the government of the private action. Had the statute been intended to make the government's remedy depend on that of the injured person, Congress surely would have included a provision requiring notice to the government of the pendency of his suit. It is no answer that § 2652 gives the President power to prescribe regulations for effectuating the statute.[10] The section makes no reference to the establishment of notification procedures, nor is there any suggestion in the legislative history that Congress contemplated the promulgation of regulations providing for notice to the government.

The fear of double recovery against the tortfeasor seems to us unfounded. In many states a plaintiff whose medical care is paid for by the government is not entitled to recover its value from the tortfeasor.[11] In the present case it is stipulated that no evidence concerning the value of hospital or medical services supplied by the government was introduced in the injured plaintiff's suit against the tortfeasor, nor has the latter claimed that the jury was charged that it could allow recovery for these items as an element of the plaintiff's damages. If a plaintiff wishes to prove medical expenses, he must demonstrate their amount and if they have been borne by the government this fact will inevitably come to the attention of the defendant, who can take steps to insure that he is not subjected to double liability. Indeed, the present case is a good illustration that what is involved in cases such as this is not really the risk of a double recovery against the defendant for the value of the medical services furnished the injured person. Instead the defendant would enjoy a windfall as a result of the injured person's inability to recover for the value of the medical services because he did not supply them if the government which had furnished them would be unable to recover. The injured person would have the usual protection of a substantial statute of limitations before his claim against the tortfeasor would be barred, but the government's right of action would be lost if the injured person's suit was brought before the six months period had gone by and then was terminated before the government intervened, all of which might occur without notice to the government. It would be a strained construction which would impute such an intention to Congress in establishing the government's independent right of recovery.

■ We hold, therefore, that the United States had the right, after six months from the date it began to furnish medical care to the injured person, to institute its independent action for the recovery of its value, even though he had sued the tortfeasor within that time and had already reduced his claim to judgment before the United States commenced its action.

The judgment of the district court will be reversed and the cause remanded for further proceedings.

HASTIE, Circuit Judge (dissenting).

As the majority opinion states, the Medical Care Recovery Act, 42 U.S.C. § 2651, was enacted to give the United States a statutory right to recover for certain medical services where the Supreme Court had held that such a right could not be created by judicial fiat. United States v. Standard Oil Co., 1947, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067. However, as I read the legislative text, the Act is so phrased and arranged that, although the government is enabled to recover in specified circumstances, no remedy is provided for the situation presented by the present case.[1] This may

---

10. 42 U.S.C. § 2652, see 28 C.F.R. § 43.

11. See Feeley v. United States, supra, n. 4; United States v. Bartholomew, supra, n. 9; Annot., supra, n. 4.

1. The text of section 2651 is set out in the majority opinion.

reflect poor draftsmanship or inadvertence. But, in my view, the courts have no more authority to supply a remedy in circumstances not specified in the Act than they had to give relief before the statute was enacted.

I agree with the majority that "subsection (b) prescribes the procedure for enforcement of the government's right of recovery". That subsection covers only two situations. First, it allows the United States to join in any action brought by or in the interest of the injured individual. Second, the United States is empowered to bring its own suit if a private "action or proceeding is not commenced within six months after" the United States first supplied medical care to the injured individual. This is all the procedural subsection provides. It simply does not afford a remedy in the present case where a private suit was filed within the six months period and the United States failed to intervene.

I think the majority agree with the reasoning and conclusion stated in the immediately preceding paragraph. But, while recognizing that subsection (a) of section 2651 declares and defines the right created by the statute and subsection (b), as its title indicates, states the authorized "enforcement procedure", the majority conclude that subsection (a) somehow independently gives courts implied authority to permit other enforcement procedures. Moreover, in thus extending the reach of subsection (a), the majority are compelled to disregard the restrictive language of subsection (b) (2) which explicitly limits the government's right to bring independent actions to situations in which the injured individual has failed to sue for a six month period. Indeed, under the present holding the entire subsection (b) (2) becomes pointless surplusage.

The majority believe it is fair and sensible to afford the government a remedy by way of a separate action in the present situation even though a private suit was filed promptly and the government failed to intervene. With this conclusion I have no quarrel. However,

Congress specified the remedies it created in a way that excludes an independent action by the United States in this situation. Therefore, I think it is not within judicial competence to grant such a remedy, however desirable that course of action may seem.

In my judgment, the district court acted properly in denying the government a remedy. I would affirm that decision.