UNITED STATES of America,
Appellant,

v.

Leta MOORE.

No. 19070.

United States Court of Appeals,
Third Circuit.

Argued March 18, 1971.

Submitted Aug. 16, 1971.

Resubmitted Under Third Circuit Rule 12(6) July 24, 1972.

Decided Oct. 19, 1972.

See also 3 Cir., 444 F.2d 475.

Daniel J. Joseph, Morton Hollander, Dept. of Justice, Washington, D. C., for appellant.

Cody H. Brooks, Warren, Hill, Henkelman & McMenamin, Scranton, Pa., for appellee.

Before BIGGS and KALODNER, Circuit Judges, and WHIPPLE, District Judge.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

The prime question presented by this appeal is whether enforcement of the federal Medical Care Recovery Act [1] ("Act") is subject to the vagaries of state family immunity laws and their right-to-sue limitations.

The District Court answered the question in the affirmative in the instant action by the United States, pursuant to the provisions of the Act, to recover from the defendant Leta Moore expenses incurred when it was obliged to provide medical care for her husband, a member of the armed forces, and their three children, for injuries caused by her undisputed negligent driving.

The District Court granted summary judgment against the United States based on its conclusion "that no tort liability exists on the part of Leta Moore arising from this accident," because, in its view, Maine law, applicable here, does not permit actions for negligent tort by one spouse against the other, or

---

1. The Medical Care Recovery Act provides in relevant part: 42 U.S.C. § 2651(a):
 "In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment  *  *  * to a person who is injured or suffers a disease  *  *  * under circumstances creating a tort liability upon some third person (other than or in addition to the United States  *  *  *) to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person  *  *  * has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished.  *  *  *"

by a minor child against a parent. The instant appeal followed.

The accident which is the genesis of this suit occurred on July 15, 1965 on the Pennsylvania Turnpike, in Fulton County, Pennsylvania. The defendant was negligently operating an automobile in which her husband and their children were passengers when she lost control of the vehicle. It crashed into a guardrail, left the highway, struck a tree and overturned, injuring its passengers. At the time the accident occurred, the defendant and her family were domiciliaries of Maine.

The United States supplied medical care to the defendant's injured husband and children, as required by law. The reasonable value of the medical care amounted to $2,290.75.

In its Memorandum Opinion, 311 F. Supp. 984, accompanying its Order granting summary judgment in favor of the defendant against the United States, the District Court held that since the Moore family was domiciled in Maine when the accident occurred, Maine law was applicable to the instant action under Pennsylvania law.

It construed the Maine family immunity law as *purging* a spouse and parent tortfeasor of any and all liability for negligent tort.

Implicit in the District Court's stated view is a *sub silentio* holding that enforcement of the Medical Care Recovery Act is subject to the vagaries of state family immunity laws.

We disagree with that view.

■ We are of the opinion that the Medical Care Recovery Act confers on the United States an independent right of recovery which is unimpaired by the vagaries of state family immunity laws; otherwise stated, enforcement of the Act is free of the impact of right-to-sue lim-

itations imposed by a state's family immunity laws.

■ We disagree, too, with the District Court's view that the Maine family immunity laws *purge* a spouse or parent tortfeasor of any and all tort liability. We do so because the Supreme Judicial Court of Maine has expressly held that Maine's interspousal immunity law does no more than impose a "legal disability" on one spouse to sue another for negligent tort, and that such disability does not operate to *"inflict injustice upon outsiders and deprive them of their legal rights."* Bedell v. Reagan, 159 Me. 292, 192 A.2d 24 (1963) (emphasis supplied).[2]

Since the prime question presented is whether enforcement of the Medical Care Recovery Act is subject to the vagaries of state family immunity laws and their right-to-sue limitations it will be accorded priority of discussion.

Relevant to its resolution is the recent holding of the Fifth Circuit in United States v. Haynes, 445 F.2d 907 (1971), that enforcement of the Act is not subject to the right-to-sue provisions of Louisiana's community property law.

In *Haynes*, the wife of a soldier was injured by his negligence. The Government provided her with medical care as a military dependent and then sued the husband and his insurance company[3] for the reasonable value of the care under the Medical Care Recovery Act. The District Court dismissed the Government's action on the ground that the defendants were free of liability because, under Louisiana's community property law the claim of an injured wife for medical expenses is a community claim which must be brought by the husband as master of the community, and that a suit by the husband against himself would be barred.

The Fifth Circuit reversed on the grounds that the Government's right of

---

2. In *Bedell*, only the Maine interspousal immunity law was involved. In Downs v. Poulin, 216 A.2d 29 (Me.1966), it was held that Maine's parental immunity law is analogous to its interspousal immunity law.

3. Louisiana law permits joinder of a defendant's insurance company as a defendant.

recovery under the Medical Care Recovery Act is an independent right free of "the vagaries of state law"; "[t]he government's right is independent and is not limited by procedural bars to which others—including Mrs. Haynes herself —might be subject"; "[m]oreover, the marital relations policy behind this state procedure is inapplicable to the federal government"; and "[t]he essential element—'circumstances creating tort liability'—is present." 445 F.2d 910.

The Fifth Circuit further noted that in United States v. Standard Oil Company of California, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), (which led to the enactment of the Medical Care Recovery Act because of its holding that then existing federal laws did not confer a right of recovery for medical care extended to a soldier and that it was up to Congress to enact such a law), it was pointed out that the Government's right of indemnification for medical care (if needed) should *"not vary in accordance with the different rulings of the several states, simply because the soldier marches or, . . . flies across state lines."* 445 F.2d 910 (emphasis supplied).

In United States v. Merrigan, 389 F. 2d 21, 23–24 (1968), we held .that the Medical Care Recovery Act "unmistakably confers on the government what the congressional reports describe as an *'independent right of recovery,'"* and, that the Act's "remedial or procedural" provisions *"are not to be construed strictly against the government, but rather in aid of the substantial right which the statute has created."* (emphasis supplied). In support of the latter holding we cited Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), where it was held that when a specific interest and right has been conferred upon the United States by statute, the remedies and procedures for enforcing that right are not to be narrowly construed so as to prevent the effectuation of the policy declared by Congress.

Significantly relevant here is our holding in United States v. Gera, 409 F. 2d 117, 120 (1969), that "the Government's exercise of its independent right under the Medical Care Recovery Act *is free of the restraints imposed by a state statute of limitations."* (emphasis supplied). It cannot reasonably be contended that a disability to sue by reason of a statute of limitations is different than a disability to sue imposed on a spouse or minor child under a state's family immunity laws.

Other circuits are in accord with *Merrigan* and *Gera.*

*Merrigan* was cited and followed in United States v. Housing Authority of City of Bremerton, 415 F.2d 239 (9 Cir. 1969). It was there held that the United States could maintain an action against the Housing Authority under the Medical Care Recovery Act, for medical care extended to an infant child of a serviceman, despite the circumstances that the child's parents could not sue the Housing Authority for its medical expenses by reason of their contributory negligence.

In so holding the Court said at page 241:

"All courts which have considered the question have agreed that the statute gives the United States an independent right of recovery against the tortfeasor; *the United States is not merely subrogated to the injured party's claim."* (emphasis supplied).

In United States v. Fort Benning Rifle and Pistol Club, 387 F.2d 884 (5 Cir. 1967), the Court held, as we did in *Gera,* that the Medical Care Recovery Act is not subject to the bar of a state statute of limitations which would have precluded the injured party, to whom medical care was extended, from bringing an action.

In so holding the Court said at page 887:

"We . . . hold that the right of the United States to recover the reasonable value of medical care given

to an injured person as a result of negligence of a third person is not subject to the state statutes of limitation applicable to local personal injury actions. *Limitations has nothing to do with whether the circumstances surrounding the injury create a tort liability in that third person.*" (emphasis supplied).

The Achilles heel of the District Court's position is its critical implicit holding that enforcement of the Medical Care Recovery Act is subject to the vagaries of state family immunity laws. That holding eclipses its earlier discussed erroneous concepts that (1) right-to-sue limitations of family immunity laws operate to purge a spouse or parent tortfeasor of all tort liability; and (2) the right of recovery accruing to the Government under the Act is nothing more than a right of subrogation.

█ The holding that enforcement of the Act is subject to the vagaries of state family immunity laws is grievous error, in utter disregard of the Congressional intent in enacting the Medical Care Recovery Act. Subjection of enforcement of the Act to vagaries of state laws would make a shambles of the Act. As matters now stand, nine of the fifty states in the Union have abolished all family immunity laws, interspousal and parental; seven of the fifty have abolished interspousal immunity only, and four of the fifty have abolished parental immunity. Most of these abandonments of immunity have occurred since enactment of the Medical Care Recovery Act in 1962; a number of them as recently as the past two years.[4]

4. STATES WHICH HAVE ABOLISHED ALL INTRA-FAMILY IMMUNITY:
ALASKA: Cramer v. Cramer, 379 P.2d 95 (Alas.1963) (Interspousal); Hebel v. Hebel, 435 P.2d 8 (Alas.1967) (Parent-child).
CALIFORNIA: Klein v. Klein, 58 Cal. 2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (1962) (Interspousal); Gibson v. Gibson, 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648 (1971) (Parent-child).
KENTUCKY: Layne v. Layne, 433 S.W.2d 116 (Ky.1968) (Interspousal); Rigdon v. Rigdon, 465 S.W.2d 921 (Ky. 1970) (Parent-child).
MINNESOTA: Balts v. Balts, 273 Minn. 419, 142 N.W.2d 66 (1966) (Parent-child); Beaudette v. Frana, 285 Minn. 366, 173 N.W.2d 416 (1969) (Interspousal).
NEW HAMPSHIRE: Morin v. Letourneau, 102 N.H. 309, 156 A.2d 131 (1959) (Interspousal); Briere v. Briere, 107 N.H. 432, 224 A.2d 588 (1966) (Parent-child).
NEW JERSEY: France v. A. P. A. Transport Corp., 56 N.J. 500, 267 A.2d 490 (1970) (Parent-child); Immer v. Risko, 56 N.J. 482, 267 A.2d 481 (1970) (Interspousal).
NEW YORK: Weicker v. Weicker, 28 A.D.2d 138, 283 N.Y.S.2d 385 (1967) (Interspousal); Gelbman v. Gelbman, 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969) (Parent-child).
NORTH DAKOTA: Fitzmaurice v. Fitzmaurice, 62 N.D. 191, 242 N.W. 526 (1932) (Interspousal); Nuelle v. Wells, 154 N.W.2d 364 (N.D.1967) (Parent-child).
WISCONSIN: Bodenhagen v. Farmers Mutual Ins. Co., 5 Wis.2d 306, 95 N.W. 2d 822 (1959) (Interspousal); Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193 (1963) (Parent-child).

STATES WHICH HAVE ABOLISHED PARENT–CHILD IMMUNITY ONLY:
ARIZONA: Streenz v. Streenz, 106 Ariz. 86, 471 P.2d 282 (1970).
HAWAII: Petersen v. City & County of Honolulu, 51 Haw. 484, 462 P.2d 1007 (1970).
ILLINOIS: Schenk v. Schenk, 100 Ill. App.2d 199, 241 N.E.2d 12 (1968).
PENNSYLVANIA: Falco v. Pados, 444 Pa. 372, 282 A.2d 351 (1971).

STATES WHICH HAVE ABOLISHED INTERSPOUSAL IMMUNITY ONLY:
ALABAMA: Penton v. Penton, 223 Ala. 282, 135 So. 481 (1931).
ARKANSAS: Leach v. Leach, 227 Ark. 599, 300 S.W.2d 15 (1957).
COLORADO: Rains v. Rains, 97 Colo. 19, 46 P.2d 740 (1935).
CONNECTICUT: Silverman v. Silverman, 145 Conn. 663, 145 A.2d 826 (1958).
LOUISIANA: United States v. Haynes, 445 F.2d 907 (5 Cir. 1971).
NORTH CAROLINA: Bogen v. Bogen, 219 N.C. 51, 12 S.E.2d 649 (1963).
SOUTH CAROLINA: Fowler v. Fowler, 242 S.C. 252, 130 S.E.2d 568 (1963).

The vice of the District Court's position that the Medical Care Recovery Act is subject to the vagaries of state family immunity laws disregards these simple elementary facts, namely:

The Act is a federal law which creates an independent substantive federal right, enacted by Congress pursuant to its constitutional powers in matters of military affairs and federal fiscal policy.

In ruling that "the scope, nature, legal incidents and *consequences* of the relation between persons in service and the Government *are fundamentally derived from federal sources and governed by federal authority,*" the Court, in United States v. Standard Oil of California, said:

"Perhaps no relation between the Government and a citizen is more distinctively federal in character than that between it and members of its armed forces. To whatever extent state law may apply to govern the relations between soldiers or others in the armed forces and persons outside them or nonfederal governmental agencies, the *scope, nature, legal incidents and consequences of the relation between persons in service and the Government are fundamentally derived from federal sources and governed by federal authority.* See Tarble's Case, 13 Wall. 397, 20 L.Ed. 597; Kurtz v. Moffitt, 115 U.S. 487, 6 S.Ct. 148, 29 L.Ed. 458. *So also we think are interferences with that relationship such as the facts of this case involve. For, as the Federal Government has the exclusive power to establish and define the relationship by virtue of its military and other powers, equally clearly it has power in execution of the same functions to protect the relation once formed from harms inflicted by others.*

"Since also the Government's purse is affected, as well as its power to protect the relationship, its fiscal powers, to the extent that they are available to protect it against financial injury, add their weight to the military basis for excluding state in-

trusion. Indeed, in this aspect the case is not greatly different from the *Clearfield* [Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943)] case or from one involving the Government's paramount power of control over its own property, both to prevent its unauthorized use or destruction and to secure indemnity for those injuries." 332 U.S. 305–306, 67 S.Ct. 1607 (footnotes omitted) (emphasis supplied).

In its further ruling that a claim by the United States for recovery of its medical care expense, arising by reason of a wrongdoer's conduct, should not be subjected to the vagaries of state law, the Court said:

"Whether or not, therefore, state law is to control in such a case as this is not at all a matter to be decided by application of the *Erie* [Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)] rule. For, except where the Government has simply substituted itself for others as successor to rights governed by state law, the question is one of federal policy, affecting not merely the federal judicial establishment and the groundings of its action, but also the Government's legal interests and relations, a factor not controlling in the types of cases producing and governed by the *Erie* ruling. And the answer to be given necessarily is dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law. These include not only considerations of federal supremacy in the performance of federal functions, but of the need for uniformity and, in some instances, inferences properly to be drawn from the fact that Congress, though cognizant of the particular problem, has taken no action to change long-settled ways of handling it.

"Leaving out of account, therefore, any supposed effect of the *Erie* decision, we nevertheless are of opinion

that state law should not be selected as the federal rule for governing the matter in issue. Not only is the government-soldier relation distinctively and exclusively a creation of federal law, but we know of no good reason why the Government's right to be indemnified in these circumstances, or the lack of such a right, should vary in accordance with the different rulings of the several states, simply because the soldier marches or today perhaps as often flies across state lines." 332 U.S. 309–310, 67 S.Ct. 1609.

Coming now to the District Court's holding that under Maine law "no tort liability exists on the part of Leta Moore arising from this accident" :

The District Court premised its holding on its construction of Bedell v. Reagan, *supra*. The long and short of it is that the District Court misconstrued the *Bedell* decision to hold that Maine's interspousal immunity law purges a spouse tortfeasor of *any and all* tort liability towards *all and sundry*.

*Bedell* did *not* hold that the Maine immunity law purges a tortfeasor of all liability towards all and sundry. It specifically held that (1) the Maine law does no more than impose a "legal disability" on one spouse to sue the other for negligent tort; and (2) a third party could pursue legal rights of recovery against a tortfeasor although the tortfeasor's wife could not sue him by reason of her "legal disability" to do so.

In making the latter stated holding the Court said in *Bedell*:

" 'The legal unity of husband and wife and the preservation of domestic peace and felicity between them are

5. The vitality of *Bedell* has not been impaired by later Maine decisions.

1. The facts of the instant case create a conflict of laws problem, but the law of Maine, where the parties were domiciled at the time of the accident, must govern rather than that of Pennsylvania, where the accident occurred.

At the time of the filing of this suit Mrs. Moore and her family were domiciled

desirable things to maintain where they do not produce injustice to the wife and *where they do not inflict injustice upon outsiders and deprive them of their legal rights.'* Fisher v. Diehl, 156 Pa.Super. 476, 40 A.2d 912, 917. *See, also* Kiser v. Schlosser, 389 Pa. 131, 132 A.2d 344, 346." 192 A.2d 26–27 (emphasis supplied).

The District Court, regrettably, overlooked the foregoing holding in *Bedell.*

■ Under *Bedell,* the Maine family immunity laws do not operate to "inflict injustice upon outsiders and deprive them of their legal rights." Here, the United States is an "outsider" possessed of "legal rights" conferred by the Medical Care Recovery Act, and *Bedell* accordingly would not bar the instant action.[5]

In summary, we are of the opinion that (1) enforcement of the Medical Care Recovery Act is free of the impact of right-to-sue limitations imposed by a state's family immunity laws, and (2) Maine law does not purge a spouse or parent tortfeasor of liability towards all and sundry.

For each of these reasons, standing alone and independently, the Order of the District Court granting the defendant's motion for summary judgment against the United States will be reversed, and the cause remanded to the District Court with directions to proceed in accordance with this opinion.

BIGGS, Circuit Judge (dissenting).

The majority opinion with an eager and commendable desire to achieve symmetry in the law fails to grasp the essentials of the principle behind the law of Maine [1] as expressed in Bedell v. Rea-

in Nebraska. Therefore, the laws of the State, here Nebraska, in which the family resided at the time of the bringing of the suit might well apply. One might also plausibly argue that the law of the State of the domicile of the family at the time of the accident, when all rights may be said to have arisen, should govern. I think it is correct to say that the State in which the accident occurred, in this instance

gan, 159 Me. 292, 192 A.2d 24 (1963). Not only does the majority opinion fail to grasp the essential principle but also goes so far as to create a common law tort for the law of Maine, and a federal common law tort as well under the Medical Care Recovery Act, 42 U.S.C., § 2651, et seq.[2]

Pennsylvania, is the State least involved in familial matters. The liability for doctors' fees and hospital bills might well be governed by the law of the place of the accident, i. e., Pennsylvania, but I cannot deem this to be a compelling reason to disregard all other facets of the case. On balance, I deem the law of Maine to be that which should be applied for the rights of the parties would become fixed at the time of the accident.

The District Court stated that the intrafamilial and interspousal immunity laws of Pennsylvania and Maine were the same. The law of Pennsylvania was the same as that of Maine in respect to claims of minor children against a parent and suits brought by one spouse against another except, as specified in 48 P.S. § 111, " . . . in a proceeding for divorce, or in a proceeding to protect and recover her [or his] separate property. . . ." Pennsylvania has recently abrogated immunity with respect to claims of minor children against a parent in Falco v. Pados, 444 Pa. 372, 282 A.2d 351 (October 12, 1971), but the liability of a wife toward her husband or a husband toward his wife was not altered by the Supreme Court of Pennsylvania because of the Pennsylvania statute of June 8, 1893, P.L. 344, § 3, as amended by the Act of March 27, 1913, P.L. 14, § 1, 48 P.S. § 111. Mr. Justice Eagen stated, 444 Pa. at 384, 282 A.2d at 357: "In our view, the above statutory enactment prevents the plaintiff, Edward Falco, from recovering damages from his wife in the personal injury action involved, even though his rights are derivative, and even though payment of the damages awarded him will come from her liability insurance carrier via attachment execution proceedings." Cf. Daly v. Buterbaugh, 416 Pa. 523, 207 A.2d 412 (1964).

The parties have stipulated that the domicile of the Moore family at the time of the filing of the instant case was Nebraska. The laws of Nebraska and Maine are similar in substance.

The District Judge found that Mrs. Moore was guilty of negligence. This finding has not been questioned.

It should be pointed out that insofar as the record shows Mrs. Moore has not been sued by any member of her family as the result of her negligence.

2. 42 U.S.C. § 2651 provides as follows: "Recovery by United States—Conditions; exceptions; persons liable; amount of recovery; subrogation; assignment.

"(a) In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person (other than or in addition to the United States and except employers of seamen treated under the provisions of section 249 of this title) to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished. The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, as appropriate, to assign his claim or cause of action against the third person to the extent of that right or claim.

"Enforcement procedure; intervention; joinder of parties; State or Federal court proceedings

"(b) The United States may, to enforce such right, (1) intervene or join in any action or proceeding brought by the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, against the third person who is liable for the injury or disease; or (2) if such action or proceeding is not commenced within six months after the first day in which care and treatment is furnished by the United States in connection with the injury or disease involved, institute and prosecute legal proceedings against the third person who is liable for the injury or disease, in a State or Federal court, either alone (in its own name or in the name of the injured person, his guardian, personal representative, estate, dependents, or survivors) or in conjunction with the injured or

## I.

*The Present Existing Barrier of Absolute Disability Preventing One Spouse from Suing the Other and Children from Suing Their Parents for Negligence.*

The rationale of *Bedell* is based on strong principles of equity asserted in a third-party defendant suit bottomed on Rule 14(a) of the Maine Rules of Civil Procedure, giving an enforceable right of contribution among negligent participating or joint tortfeasors.[3]

The law of Maine has erected a barrier of absolute disability preventing one spouse from suing the other and children from suing their parents for negligence. Abbott v. Abbott, 67 Me. 304 (1877); Libby v. Berry, 74 Me. 286 (1883); Anthony v. Anthony, 135 Me. 54, 188 A. 724 (1937). The absolute disability extends to suits between a parent and his unemancipated, minor child. Skillin v. Skillin, 130 Me. 223, 154 A. 570 (1931); Downs v. Poulin, Me., 216 A.2d 29 (1966). The barrier that was in existence in 1877 still remains. *Bedell* has *not* changed the law applicable in the case at bar. In *Bedell*, 159 Me. at 295–296, 192 A.2d at 26, the

Supreme Judicial Court of Maine stated, basing its view on not only Rule 14(a), M.R.C.P., but also on the Reporter's notes, as follows: "There is an enforceable right of contribution *amongst negligent participating or joint tortfeasors:* ' * * * when the parties are not intentional and wilful wrongdoers, but are made wrongdoers by legal inference or intendment, are involuntary and unintentional tortfeasors * * *. *It is an equitable right founded on acknowledged principles of natural justice and enforceable in a court of law.'* Hobbs v. Hurley, 117 Me. 449, 451, 104 A. 815, 816.

"Maine Civil Practice, Field and McKusick, Rule 14, Reporter's notes at page 186 observes: 'This rule is similar to Federal Rule 14 * * * When a defendant believes that a third person, not a party to the action, *is or may be liable to him for all or part of the plaintiff's claim, he may bring such third person into the case as a party by service upon him of a summons and complaint.* Thus the entire controversy can be settled in a single proceeding. * * * Impleader cannot be used by a defendant who contends that it is the third party instead of the defendant who is liable to the plaintiff.'

diseased person, his guardian, personal representative, estate, dependents, or survivors."

3. Rule 14(a)—"*When Defendant May Bring in Third Party.* At any time after commencement of the action a defendant as a third-party plaintiff may cause to be served a summons and complaint upon a person not a party to the action who is or may be liable to such third-party plaintiff for all or part of the plaintiff's claim against him. The person so served, hereinafter called the third-party defendant, shall make his defenses to the third-party plaintiff's claim as provided in Rule 12 and his counterclaims against the third-party plaintiff and cross-claims against other third-party defendants as provided in Rule 13. The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the sub-

ject matter of the plaintiff's claim against the third-party plaintiff. The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and his failure to do so shall have the effect of the failure to state a claim in a pleading under Rule 13(a). The third-party defendant thereupon shall assert his defenses as provided in Rule 12 and his counterclaims and cross-claims as provided in Rule 13. Any party may move for severance, separate trial, or dismissal of the third-party claim; the court may direct a final judgment upon either the original claim or the third-party claim above in accordance with the provisions of Rule 54(b). A third-party defendant may proceed under this rule against any person not a party to the action who is or may be liable to him for all or part of the claim made in the action against the third-party defendant."

"In its commentary applicable to Rule 14(a), Maine Rules of Civil Procedure, 155 Me. 504, and to Rule 14(a) of the Federal Rules of Civil Procedure, Federal Practice and Procedure, Barron and Holtzoff-Wright, contains inter alia the following: ' § 421. * * * *only a person who is secondarily liable to the original defendant may be brought in.*' " (Emphasis added).

*Who is the negligent participating or joint tortfeasor with Mrs. Moore in this case? Who is the person or persons secondarily liable here?* Is Mrs. Moore's innocent husband deemed by the majority to be a tortfeasor? Are the children deemed to be joint tortfeasors with their mother who was driving the car? Insofar as the present record shows, they were merely passengers. There is no person or persons secondarily liable in the case at bar. This is an important fact which the majority completely overlooks.

I reiterate that the law of Maine has not changed since 1877. In Potter v. Schafter, 161 Me. 340, 341–343, 211 A.2d 891, 892 (1965), decided two years after the decision in Bedell, the Supreme Judicial Court of Maine, after a preliminary reference to the common law upon which Maine's "judicature rests", said: "We are urged to sustain the appeal, grant plaintiff-wife a right to recovery and *thereby judicially legislate a new cause of action.* Lead by Hitaffer v. Argonne Co., Inc., 87 U.S.App.D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366, on which certiorari was denied in 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950), which granted the wife a cause of action for her loss of consortium of her husband resulting from negligent conduct of a third person, ten other states have followed by judicial decision and one, Oregon, has done so by statute. Meantime nineteen jurisdictions, having considered the question, have denied recovery. See Igneri v. Cie de Transports Oceaniques, 323 F.2d 257, 260, 261 (2 C.C.A. 1963).

"We are aware that as a common law court we have the power to grant this new cause of action, and we are remind-ed that in Bedell v. Reagan, 159 Me. 292, 192 A.2d 24, we exercised this prerogative and held that a defendant in a complaint brought by husband and wife for negligence resulting in wife's personal injury might implead the plaintiff-husband as a third party defendant, thereby allowing defendant equitable recourse for contribution toward the monetary damage which otherwise would compensate not only for his own fault, but also 'the pecuniary equivalent of the husband's wrong',—but within the narrow limits prescribed.

"The change in the common law declared by Bedell was not a result, however, of *a collision between the principle of stare decisis and contemporary legal philosophy* above, as is true in the present case. The adoption of our civil rules, effective December 1, 1959, introducing third party practice into Maine, which was a drastic departure from pre-rule procedure, was designed 'to secure the just, speedy and inexpensive determination of every action.' Rule 1, M.R.C.P. In Bedell the court dealt with a collision between Rule 14, M.R.C.P. and *the common law 'disability of reciprocal spouses' as cross litigants.* Bedell, 159 Me. at page 296, 192 A.2d 24. Under such circumstance we held that the integrity of the civil rules and their declared purpose, but within the narrow limits required equitably in the Bedell situation, overrode the pre-existing rule of marital disability of the common law. There is not only a distinction, but also a difference.

*"The proposed creation of a new cause of action in the wide field of torts merits consideration by the legislature,— where upon notice the diverse interests affected by such proposition may be heard. If Maine is to join the minority,* though a respectable minority, *it must do so through our legislative branch. Under the facts here, it is not for us 'to usurp legislative authority.'* Sacknoff v. Sacknoff, 131 Me. 280, 283, 161 A. 669. *Representations for a change such as here urged should be directed to the leg-*

islature. \* \* \*" (Emphasis added). The appeal was dismissed.

Lest the foregoing be not conclusive, I call attention to Roberts v. American Chain & Cable Co., Me., 259 A.2d 43, 48 (1969). An interesting analogy is drawn between *Bedell* and the cited case. It was said: "The reciprocal disability of spouses respecting litigation against each other arising from feudalistic customs out of the concept of unity of the parties to a marriage contract has endured to this day as a vestigial remnant of State policy dedicated to the preservation of domestic tranquility. The common law doctrine of unity in marriage has been so eroded during the years by positive legislation that in modern times the status of the spouses has been practically equalized and the unity of marriage concept remains more theory than fact. In realistic terms, we decided in Bedell that '[t]he mystical concept of personal, wedded unity and the paternalistic apprehension of domestic discord between the spouses can not be so compelling as to vindicate' the rule of spousal immunity *from contribution between joint tortfeasors when one of the joint wrongdoers happens to be the spouse of the injured party.*

"The underlying policy supporting the right to contribution between joint tortfeasors espoused by this Court does not rest in contract. We recognize an equitable right founded on acknowledged principles of natural justice that when one has discharged or may be obligated to discharge more than his share of a common liability, he may have contribution from the other joint tortfeasor whose negligence concurred with his in producing the injury." [4] (Emphasis added).

*I again ask the question, who is the negligent participating or joint tortfeasor with Mrs. Moore in the case at bar?*

The majority opinion has used *Bedell* to support a conclusion which is totally inapposite. Note 5 of the majority opinion stating that *Bedell* retains its "vitality" is quite true and correct but this is beside the point. The circumstances at bar are different from those of *Bedell* because here no tortfeasor has been joined with Mrs. Moore. The majority states, "Under *Bedell,* the Maine family immunity laws do not operate to 'inflict injustice upon outsiders and deprive them of their legal rights.' Here, the United States is an 'outsider' possessed of 'legal rights' conferred by the Medical Care Recovery Act, and *Bedell* accordingly would not bar the instant action." I do not assert, of course, that *Bedell* bars the instant action; *Bedell* simply does not authorize, sustain, or aid it and is in fact irrelevant for the necessary attendant circumstance of a negligent participating or joint tortfeasor is not present here. In short, the United States is not an outsider possessed of legal rights within the *Bedell* rationale since it is not a negligent participating or joint tortfeasor. The foregoing sums up the ineluctable conclusion that the majority refuses to face.

Certainly in determining whether there exist "circumstances creating a tort liability upon some third person," an important circumstance here is the current law of Maine, under which no tort liability exists vis-à-vis Mrs. Moore.

4. At an earlier point, 259 A.2d at 48, the Supreme Judicial Court stated: "In Bedell v. Reagan, 1963, 159 Me. 292, 192 A.2d 24, our Court, in permitting contribution from the husband of an injured wife, stated that '[t]he element [of common liability of both tortfeasors to the injured person] should not be a controlling condition or factor when one joint tortfeasor unintentionally and negligently has wrought harm which he is dispensed from righting because of his matrimonial union with the victim but which the other joint tortfeasor not in the marital relation must redress in full to the injured spouse without any equitable right of contribution from the joint tortfeasor spouse. \* \* \* It is of the very object of equity to prevent the application of a universal legal principle in an eventuality where unconscionable and unjustifiable hardship must otherwise ensue.' "

It is not a function of this court to create a new common law remedy for Maine. As the Supreme Judicial Court of Maine has said, this is a function which should be left to the state legislature. But the majority disregards this sound principle and, as has been said, has actually created a new common law remedy and embedded it on the law of Maine.

For the reasons stated the majority opinion is clearly in error on this phase of the case.

## II.

*The Majority Opinion Also Creates a Federal Common Law Tort and Thereby Allows Recovery to the United States.*

Since Erie R. Co. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), there have been no federal common law torts in any true sense.[5] It cannot be doubted that Congress intended to give and did give to the United States, if a tort had been committed, an independent right of recovery against the tortfeasor and that the United States is not merely subrogated to the injured party's claim. See United States v. Housing Authority of City of Bremerton, 415 F.2d 239, 241 (9 Cir. 1969). But it was the intention of Congress to compel the United States to maintain its suit through the tort law of the respective States and if state law did not create an actionable tort claim, recovery could not be had by the United States.

The Congressional reference is to the substantive law of the States, which here must be determined to be that of Maine.[6] I say *substantive* law *not procedural.*[7] The language of the statute, particularly the phrase of 42 U.S.C. § 2651(a), *"under circumstances creating a tort liability upon some third person,"* (emphasis added) must be construed as a reference to the tort law of a State or territory. It follows that Congress was not looking to a nonexistent federal tort but to the tort laws of the States, and it would seem to be a highly metaphysical argument to contend that intrafamilial or interspousal immunities, while they may be part of the familial law of a State, such as Maine, are not under the circumstances at bar completely applicable to Maine tort law. It would appear that *Erie R. Co.* is applicable.[8] It follows, under the circumstances at bar, that the creation of liability under Maine tort law cannot be considered apart from the Maine doctrines of intrafamilial and interspousal immunity, such an "apart" consideration being employed to enable the United States to recover. The Maine law must be taken as a whole.

In an article entitled Public Law 87–693: An Analysis and Interpretation of the Federal Medical Care Recovery Act, by Eli P. Bernzweig, Esquire,[9] 64 Col.L.

---

5. Cf., however, Hinderlider v. La Plata River & Cherry Creek Ditch Co., 304 U.S. 92, 58 S.Ct. 803, 82 L.Ed. 1202 (1938), decided on the same day as Erie R. Co. also by Mr. Justice Brandeis.

6. See note 1, *supra.*

7. As to the very numerous interpretations of the doctrines, varying from State to State, see Interspousal Immunity—A Policy Orientated Approach, 21 Rutgers L. Rev. 491 (1967), and Negligence-Parent-Child—New York Abrogates Parent-Child Immunity Doctrine, Comment, 44 Notre Dame Law 1001 (1969).

8. *The doctrine* of Clearfield Trust Company v. United States, 318 U.S. 363, 63 S. Ct. 573, 87 L.Ed. 838 (1943), seems not applicable here for it is clear that Con-

gress has spoken to make local tort law governing.

In *Clearfield,* supra at 367, 63 S.Ct. at 575, Mr. Justice Douglas stated: "In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards. United States v. Guaranty Trust Co., 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed. 415, is not opposed to this result." In the case at bar there is an applicable Act of Congress. It is 42 U.S.C. § 2651(a) and therefore it is not for the courts to fashion the governing rule of law according to their own standards.

9. Mr. Bernzweig is a member of the New York Bar, B.S., Rutgers University, 1950; LL.B., 1953. He is an attorney in the Public Health Division, Office of the Gen-

Rev. 1257, 1259, 1261–62 (1964), the following is stated under the heading, "I. The Substantive Rights of the United States: A. *Independent Right of Recovery*"—"From the viewpoint of interpreting the legislative history of the act, it is important to note that all of the federal agencies reporting to Congress on H.R. 298 submitted duplicate reports to both the House and Senate Judiciary Committees *based on the language contained in the original bill.* Consequently, the comments in these reports relating to the nature of the right to be conferred on the United States are both irrelevant and misleading if applied to the bill in its amended form. Several agencies, for example, treated that right as a mere derivative right of subrogation, governed exclusively by local law.[10]

"The statutory scheme is positive and unequivocal: the Government's claim arises when a beneficiary of gratuitous federal medical care suffers injury or disease under circumstances that subject a third person to tort liability. At this point, the Government and the beneficiary possess independent (albeit concurrent) rights of recovery against the tortfeasor. The Government will recover if it demonstrates, in accordance with procedures established by the act, that the third person was, in fact, 'tortiously liable.' Moreover, by creating this dichotomy between two independent causes of action, Congress has provided the Government with greater rights of recovery under certain circumstances than those enjoyed either by the beneficiary or by a common-law 'assignee' or 'subrogee.' The dichotomy also makes clear that the tortious injury suffered by the beneficiary is, in effect, merely a condition precedent to an otherwise independent right of recovery in the Government; it negatives the view that the *procedural infirmities* of the beneficiary's claim under local law may compromise the Government's separate cause of action.

"B. *State Law and the Existence of Tort Liability*

"The Government's right to recover under the act is subject to the condition precedent of 'circumstances creating a tort liability upon some third person.' The question arises whether federal or state tort rules determine the liability of the third person. *Both the act and its legislative history are silent on this matter, but there appears to be little reason to doubt that state law is controlling. The very silence of the act tends to confirm this view: when Congress desires to depart from local law, it usually makes its intention clear in the legislation itself or in the committee reports. For example, the intent to 'occupy' the fields covered by the Jones Act and the Federal Employers' Liability Act led*

---

eral Counsel, Department of Health, Education and Welfare.

10. Mr. Bernzweig points out in his cited article, 64 Col.L.Rev. 1257, 1261 n. 23: "For example, the Deputy Attorney General [now Mr. Justice Byron R. White] stated in his report: 'It was, therefore, considered preferable to bottom the basic theory of this legislation on the "subrogation" concept, one which is universally recognized, understood, and regularly applied by all courts, and which would more closely conform the rights of the United States, and the procedure for their enforcement, to the local law and practice, whatever it might be.'

The Deputy Attorney General also stated in his letter of August 1, 1961 to Mr. Celler, Chairman of the House Judiciary Committee, 1962 U.S.Code Cong. and Adm.News, pp. 2643, 2644, the following: "[I]f under local law the injured person would have no claim on account of such damages the United States would also have none; if he would have such a claim, the United States would become entitled to that claim, but to no more. This provision would therefore make allowance for even the rare situation where, under local law, a person would have no right to recover on account of medical expenses which he had neither paid nor become obligated to pay."

See the comments of the Department of Health, Education and Welfare and the Comptroller General. S.Rep.No.1945, 87th Cong., 2d Sess. 10–13, 16–22, U.S. Code Cong. and Admin.News 1962, p. 2643.

The legislative history, for the reasons stated, is none too helpful.

*Congress to preempt local law by expressly prescribing standards of conduct that give rise to liability. Moreover, when Congress has remained silent on the issue of governing tort law, as in the case of the Federal Employees' Compensation Act (FECA), the courts have consistently applied local law tort rules. Finally, the FMCRA is designed to allow the Government to recover costs incurred in the operation of its medical care programs, not to regulate the conduct of tortfeasors. Arguments based on desirable uniformity in the achievement of the goals of the act therefore properly relate to matters of collection procedure and to the separate status of the Government's right to reimbursement. Since the act does not purport to establish a single standard of conduct, it neither compels nor suggests the need for the application of a uniform federal law of torts."* (Notes omitted; emphasis added).

Mr. Bernzweig goes on to say that the decision in United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947) "does not call for application of federal law under the FMCRA, even though it has frequently been cited for the proposition that federal law controls whenever the Government sues in tort. In that decision, the Supreme Court refused to create a new tort—interference with the government-soldier relationship—as a means of permitting the Government to recoup its medical costs. *However, when Congress acted to create a right of recoupment in the Government by passage of the FMCRA, it did so not by creating a new tort, but merely by conferring a right that arises when a beneficiary is injured by conduct that would have been deemed tortious prior to the passage of the act.*

"The cause of action created by the act, therefore, is simply one where rights under state tort law become material to the application of a federal statute. Typically, the courts have held that a federal statute may be interpreted as permitting such rights to be determined under local law. In the prolific field of federal taxation, for example, the Supreme Court has written, 'State law creates legal interests and rights. The federal revenue acts designate what interests or rights, *so created,* shall be taxed.' The analogy to tax law is particularly persuasive in view of the similarity in nature of the Government's rights under the FMCRA and under the federal tax laws. In each case the statute is a fiscal enactment designed to give the Government a right to collect monies into the Federal Treasury, and Congress has selected an event (acquisition of taxable income on the one hand, tort liability on the other) which, once it occurs, gives the United States a right to recover. Local law determines the legal relations, and the latter, in turn, create liability under the pertinent federal statute." (Notes omitted; emphasis added).

So viewed the decisions are pretty much reconcilable and are not as conflicting as first appears. In United States v. Housing Authority of City of Bremerton, 415 F.2d 239 (9 Cir. 1969), a local statute of limitations was not permitted to bar recovery by the United States. But it should be noted that Judge Hamlin in the cited case stated: "Under section 2651(a) the United States may recover only where there is tort liability in a third person. *Where the injured party is himself negligent, and where under state law that contributory negligence absolves the third person from liability, then the United States cannot recover from that third person.* This is what the statute must mean, and it is to this situation that the language in *Fort Benning* [United States v. Fort Benning Rifle and Pistol Club, 387 F.2d 884 (5 Cir. 1967)] and *Greene* [United States v. Greene, 266 F. Supp. 976 (N.D. Ill.1967)] was directed. On the other hand, here the Housing Authority was liable for the infant's injuries, and under state law any possible contributory negligence of the parents was irrelevant to that liability. Thus, the terms of the Act are fully met, and any contributory negligence of the parents can in no way defeat recovery by

the United States. It is therefore unnecessary to return the case to the district court for a determination of this issue." (id. at 243, emphasis added).

Our decision in United States v. Gera, 409 F.2d 117, 120 (1969), as the majority opinion points out, concludes that "the Government's exercise of its independent right under the Medical Care Recovery Act *is free of the restraints imposed by a state statute of limitations.*" (Emphasis in majority opinion.) This is nothing more than a refusal to recognize a procedural barrier. To the same effect is United States v. Fort Benning Rifle and Pistol Club, 387 F.2d 884 (5 Cir. 1967), also cited on the majority opinion.

In United States v. Merrigan, 389 F.2d 21, 23–24 (1968), as the majority opinion correctly points out, we held that the Medical Care Recovery Act "unmistakably confers on the government what the congressional reports describe as an *'independent right of recovery'*", and, that the Act's "remedial or procedural" provisions *"are not to be construed strictly against the government, but rather in aid of the substantive right which the statute has created."* (Emphasis in majority opinion.) I do not doubt the correctness of this statement, but it is not to the point, for the issue remains as to whether the Government's right of recovery arose out of the tort law of the States "under circumstances creating a tort liability upon some third person." In *Merrigan,* however, we held *only* that the United States had the right, after the expiration of six months from the date it began to furnish medical care to the injured veteran, to institute an independent action for the recovery of the cost of that care, even though the veteran had sued the tort-feasor within six months and had reduced his claim to judgment before the United States commenced its action. The broad statement relied on in the majority opinion is dictum, and the issue before us on this phase of the case was not in focus.

We are also aware, of course, of the decisions of the Supreme Court cited by the majority. In Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), it was held that when a specific interest and right had been conferred upon the United States by statute, the remedies and procedures for enforcing that right were not to be narrowly construed. But in *Wyandotte,* the statute *sub judice,* section 15 of the Rivers and Harbors Act of 1899, as amended, 33 U.S.C. § 409, has no relation whatsoever to 42 U. S.C. § 2651, and the principal enunciated by Mr. Justice Fortas seems inapplicable in the present case. The case was concerned with the removal of a barge loaded with deadly chlorine containers from the Mississippi River.

United States v. Haynes, 445 F.2d 907 (5 Cir. 1971), does not support the majority opinion. In *Haynes,* a wife, a military dependent, who was injured by the negligence of her husband was a person injured "under circumstances creating tort liability" upon the husband. Recovery by United States from the husband and his liability insurer was not defeated by the Louisiana law granting a cause of action for the recovery of medical expenses exclusively to the community and therefore to the husband as its master. It must be emphasized that Judge Clark, writing for the Fifth Circuit, stated: "This action, brought by the United States of America under the provisions of the Medical Care Expense Recovery Act, 42 U.S.C.A. § 2651 et seq., sought to recover for certain medical services which it was statutorily obligated to render. Since we determine that the Louisiana law which grants the cause of action for the recovery of medical expenses exclusively and solely to the community and therefore to the husband as its master, *is a procedural device which has nothing to do with whether the circumstances surrounding the injury create a tort liability, we reverse the district court."* (id. at 908, emphasis added).

The distinction between substantive and procedural law is clearly maintained in *Haynes*. While such distinctions may be unwitty diversities, nonetheless they do exist, and I think we must heed them in the case at bar. The judgment of the Court of Appeals of the Fifth Circuit which deals with the law of Louisiana should be deemed to be both expert and correct in its evaluation of that law.

The majority also cite, as did the Fifth Circuit in *Haynes*, United States v. Standard Oil of California, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), in which the Supreme Court made clear what it deemed to be the kind of law that Congress should enact. Unfortunately, Congress did not accomplish what the Supreme Court intended that it should. See note 9, *supra*, and notes 17, 18, 19, 20, 21, 22, 23, 24 and 35–45 cited to the text of the Bernzweig article, *supra*. Congress expressly used the phrase, as I have stated repeatedly, "under circumstances creating a tort liability upon some third person" and made reference thereby to the tort law of the several States.

It should be noted that the majority opinion in its note 4 devotes several pages to a summary of States which have abolished all intrafamilial immunity and States which have abolished parent-children immunity only, and the States which have abolished interspousal immunities only, with appropriate citations and references. I am not able to perceive the relevancy of the contents of this note to the instant problem. In fact, actions by numerous States in obviating the effect of intrafamilial and intra-parental immunities seem to indicate that the States are enacting statutes to enable the United States to recover by application of the Federal Medical Care Recovery Act to the law of the States, but if the majority position is correct, the changes effected by statute from the common law are unnecessary.

Symmetry is desirable in law, but it cannot be deemed to be an essential of statutory construction.

It is the law of Maine, which the majority misconstrues, that must be interpreted, not the laws of the other forty-nine States. The majority opinion subjects the law of the states to further unfortunate emasculation.

For the reasons indicated I must respectfully dissent.