UNITED STATES of America, Plaintiff,

v.

Cleophia NEAL, Defendant.

Civ. No. 77–0–236.

United States District Court,
D. Nebraska.

Jan. 18, 1978.

As Amended March 15, 1978.

Robert F. Kokrda, Asst. U. S. Atty., Omaha, Neb., for plaintiff.

Jeffrey A. Silver, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

In November of 1975, Air Force Sergeants Cleophia Neal and Lewis Sexton embarked on a trip from Omaha, Nebraska, to the Kansas City, Missouri, area. While travelling in Missouri, the defendant's automobile was involved in a one car accident which resulted in injuries to Sexton. As required by 10 U.S.C.A. § 1074 (1975), medical care was furnished to Sexton by the United States Air Force. The government instituted this action under the Federal Medical Care Recovery Act to recover medical expenses resulting from the alleged negligence of the driver of the car. Neal asserts that the right of the United States is limited by state law and contests his liability for the reasonable value of the medical care provided to Sexton by relying on Nebraska's guest statute. Maintaining that proper application of the conflict of laws rules of Nebraska and Missouri would require reference to the internal law of this state, the defendant argues that the failure of the United States to allege gross negligence or intoxication is fatal to the complaint given the limited nature of the governmental remedy. This matter has been presented to the Court in the form of a motion to dismiss for failure to state a claim upon which relief can be granted.

The State of Nebraska has legislation which negates the liability of an owner or operator of a motor vehicle to a gratuitous guest in the absence of gross negligence or intoxication of the driver.[1] Missouri law requires only a showing of negligence before a non-paying passenger is entitled to recover.[2] Both parties concede that an application of the Missouri rule would allow the United States to state a valid claim for recovery. Whether a guest statute negates the recovery rights of the government under 42 U.S.C.A. § 2651 is a question that has not been definitively answered. In light of this uncertainty, the Court feels compelled to analyze the character of the remedy of the United States to determine whether resolution of the choice of law problem is decisive in this lawsuit.

## Character of the Remedy

The Federal Medical Care Recovery Act[3] was passed by Congress in 1962 to create a basis for governmental recovery of expenses incurred during the medical treatment of military personnel for injuries sustained as a result of tortious behavior by a

---

1. The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in such motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of such motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle. Neb.Rev.Stat. § 39–6,191 (Reissue 1974).

2. *Kennedy v. Dixon,* 439 S.W.2d 173, 185 (Mo. 1969).

3. In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment . . . to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person

third party. The statute was enacted in response to the decision of the Supreme Court in *United States v. Standard Oil Co.,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947).[4] In that case, a soldier was hit and injured by the defendant's truck. The government sued on theories of indemnity and tortious interference with a government-soldier relationship.[5] Recovery on a subrogation claim was not possible, as the injured serviceman had given the corporation a release "from any and all claims . . arising out of" the accident.[6] The Supreme Court held that it had no power to extend the ancient tort of *per quod servitium amisit* to a government-soldier relationship without Congressional creation of an independent right to recover.[7]

The question that has faced courts and commentators ever since is whether Congress actually created a basis for governmental recovery separate and apart from any subrogative rights that might be subject to defenses against the injured serviceman.

The original version of the Recovery Act provided for a purely subrogative right to recover against tortfeasors.[8] The House Judiciary Committee was criticized for this approach by the Department of Health, Education and Welfare. H.E.W.Rep. on H.R. 298, 87th Cong., 2nd Sess., *reprinted in* [1962] U.S.Code Cong. & Admin.News, pp. 2637, 2645–48. Recognizing that a subrogative right might preclude governmental recovery in some instances under state law [9], the Committee amended the bill to its present form. Reference to the legislative history of the ambiguously worded final draft does not clarify the exact meaning of the amendment.[10]

One commentator has stated that the language defining the nature of the govern-

. . . to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished. . . 42 U.S.C.A. § 2651(a) (1973).

4.  Sen.Rep. No. 1945, 87th Cong., 2d Sess. 1, *reprinted in* [1962] U.S.Code Cong. & Admin. News, p. 2637.

5.  332 U.S. at 304 n. 5, 67 S.Ct. 1604.

6.  *Id.* at 302, 67 S.Ct. at 1605.

7.  The doctrine of *per quod servitim amisit* "attacks the question of recovery directly. Instead of allowing a right of recovery which derives from the injured party, it recognizes that injury to one individual may also cause injury or loss to others, and that this secondary loss should be recompensed directly." Long, *The Federal Medical Care Recovery Act: A Case Study in the Creation of Federal Common Law,* 18 Vill.L.Rev. 353, 357–58 (1973).

Few cases have examined the tort of *per quod.* Seavey, *Liability to Master for Negligent Harm to Servant,* 1956 Wash.U.L.Q. 309, 311. It has not been extended beyond the master-servant relationship. *Darmour Prods. Corp. v. Herbert*

*M. Baruch Corp.,* 135 Cal.App. 351, 27 P.2d 664 (1933).

8.  In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment . . . to a person who is injured or suffers a disease . . . under circumstances creating a tort liability upon some third person . . . to pay damages therefor, the United States shall be subrogated to any right or claim that the injured or diseased person . . . has against such third person with respect to the care and treatment so furnished . . . . H.R. 298, 87th Cong., 1st Sess. § 1a (1961).

9.  Specific reference was made to the applicability of the collateral source doctrine. In some states, the injured party can sue the tortfeasor for medical costs despite governmental absorption of expenses. In other jurisdictions, the serviceman is precluded from receiving a windfall at government expense. Under the latter rule, the right of the United States to recover is denied unless a basis for recovery other than subrogation is invoked.

10.  According to the House report, the purpose of the change was to make it "clear that the United States is granted a distinct right to recover its costs and that this right is to be effectuated through a partial subrogation to any right which the injured party or diseased person may have to proceed against the negligent third party." H.R.Rep. No. 1534, 87th Cong., 2d Sess. 3 (1962).

ment's remedy is subject to five possible interpretations. Long, *supra* note 7, at 369–73. Each of the suggested approaches has been adopted by at least one court.

Illustrative of the first alternative is *United States v. Greene,* 266 F.Supp. 976 (N.D.Ill.1967). That court held that Congress could not create a subrogation in the United States. The lack of a duty on the part of the injured party to repay the government for medical expenses was decisive in *Greene.* Since no underlying obligation existed, the court reasoned that the United States had no rights to which it could be subrogated. The effect of this holding is to read the reference to the subrogation right out of the statute. As Professor Long points out, this interpretation does not recognize the principle of statutory construction which provides that no portion of a statute ought to be regarded as being without meaning. Long, *supra* note 7 at 369; *State v. Black,* 195 Neb. 366, 238 N.W.2d 231 (1976).

The Fifth Circuit embraced the second possible interpretation of the Recovery Act in *United States v. Fort Benning Rifle & Pistol Club,* 387 F.2d 884 (5th Cir. 1967). The *Fort Benning* court concluded that an independent right of recovery was created by the statute, but that the right does not extend to "state substantive defenses which would negate the requirement that the injury arise 'under circumstances creating a tort liability upon some third person.'" 387 F.2d at 887.

The third interpretation suggests that a single subrogative right was independently created by Congress. *United States v. Guinn,* 259 F.Supp. 771, 773 (D.N.J.1966). Not surprisingly, this approach is favored by the insurance industry. *See, e. g.,* Groce, *The Federal Medical Care Recovery Act and Its Side Effects,* 36 Ins. Counsel J. 1259 (1969).

Another school of thought on the issue suggests that the right of subrogation was displaced by the independent right when the amendment was made to the original statute. Under this interpretation, the statutory reference to subrogation creates a procedural avenue through which the governmental right can be enforced. The Third Circuit has so held in *United States v. Merrigan,* 389 F.2d 21 (3d Cir. 1968). Several commentators have been swayed by the logic of this interpretation. *See, e. g.,* Comment, *The Rights and Remedies of the United States Under the Federal Medical Care Recovery Act,* 74 Dick.L.Rev. 115, 116–23 (1970); Noone, *May Plaintiff Include the United States' Claim Under the Federal Medical Care Recovery Act Without Government Intervention?,* 10 AF Jag L.Rev. 20 (1968); Bernzweig, *Public Law 87–693: An Analysis and Interpretation of the Federal Medical Care Recovery Act,* 64 Colum.L.Rev. 1257, 1259 (1964).

The final possible interpretation of the Recovery Act credits Congress with the intent to form two separate causes of action. Under this alternative, the United States not only has an independent right to sue, but can also take advantage of the statutory creation of a legal subrogation to the rights of the injured serviceman under state law. *Tolliver v. Shumate,* 151 W.Va. 105, 150 S.E.2d 579 (1966).

Professor Long has concluded that the fifth alternative best interprets the intent of Congress. Long, *supra* note 7 at 371–72. The Court is persuaded by his analysis. It would appear that the House Judiciary Committee did not recognize the distinct legal theories involved when the new independent right was engrafted upon the original subrogation scheme. While the legislative history of the Recovery Act is not clear, the emphasis on the independent nature of the government's remedy under the amended statute is apparent throughout. Despite the unfortunate language used in the law as enacted, the legislative history tends to suggest an intention to create more than one basis for recovery.[11]

---

11. The House Report on the effect of the amendment states that "the distinct right in the Government along with the equally distinct rights of the individual are again emphasized.

It is clear that independent rights of recovery exist . . . . H.R.Rep. No. 1534, 87th Cong., 2d Sess. 1, 3 (1962).

■ While the Court holds that the government has an independent remedy under the Recovery Act, no absolute right to recover exists under this theory. The Act specifically provides that the independent right to recover arises only "under circumstances creating a tort liability upon some third person."[12] Most courts have assumed that state law should apply in the determination of the existence of such circumstances. This assumption should not be made casually, as in other instances Congress has specifically mandated that state substantive law should govern an issue.[13] In the absence of such a specific directive, the authority of the federal judiciary to devise decisional rules without reference to state law has been recognized in non-diversity cases. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Mishkin, *The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision,* 105 U.Pa.L.Rev. 797, 800 (1957). *See also Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), where the Supreme Court held that federal rather than state law should determine the existence of negligence under the Federal Employers' Liability Act.

■ This does not mean that courts have not recognized the value of state law in the process of choosing an appropriate legal rule. Policy considerations may justify the adoption of local law as the federal standard. *United States v. Chappell Livestock Auction,* 523 F.2d 840 (8th Cir. 1975), *formerly reported at* 514 F.2d 660 (8th Cir. 1975).

Two commentators have suggested that a starting point in the search for an appropriate legal rule in a non-diversity case is the Rules of Decision Act.[14] According to these authorities, this statute would create a presumption that state law ought to be incorporated as the federal common law.[15] The presumption could be overcome if a federal rule must be protective of federal policy, or if uniformity within the federal system is desirable.

■ The Court believes that state law should be adopted as the federal rule of law under the Recovery Act. Congress did not create an absolute right for the government to recover reasonable medical expenses from those who cause injury to servicemen. Remedies created in the Recovery Act were remedial in nature. The legislative purpose was to prevent windfalls by protecting the proprietary interests of the United States.[16] There is no suggestion that Congress intended to create a uniform basis for recovery in the government to the detriment of existing expectancies under state law.[17]

*State Law and the Federal Remedy*

■ Under the Recovery Act, the government's subrogative right can be exercised only if the party causing the injury is tortiously liable to the victim under state law. It is clear that if the internal law of Missouri is adopted as the rule in this case, the United States has stated a cognizable cause of action in its allegation of ordinary negligence on the part of the defendant. It seems equally obvious that if the Nebraska guest statute is invoked, the subrogative right of the government is insufficient. Since Sergeant Sexton could not recover from Neal without an allegation of gross negligence, the United States is similarly limited in its assertion of this derivative right. While recovery under the independent right in Nebraska is not so limited, circumstances creating a tort liability upon some third person must be demonstrated.

---

12. 42 U.S.C.A. § 2651(a) (1973).

13. Direct reference to state law is mandated by the Federal Tort Claims Act. 28 U.S.C.A. § 1346(b) (1976); 28 U.S.C.A. § 2674 (1965).

14. The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply. 28 U.S.C.A. § 1652 (1966).

15. Comment, *The Federal Common Law,* 82 Harv.L.Rev. 1512, 1517–31 (1969); Comment, *Rules of Decision in Nondiversity Suits,* 69 Yale L.J. 1428, 1432 (1960).

16. Long, *supra* note 7 at 374–75.

17. *Id.* at 376.

In analyzing this problem, the Court must examine the nature of Nebraska's alteration of the common law rule of driver liability to a passenger.

■ Courts that have considered the effect of state immunity doctrines on the governmental right to recover have allowed the United States to prevail. A crucial distinction hinges on whether public policy has created a procedural bar to the enforcement of an underlying right as opposed to the vitiation of all tort liability. Barriers to the right of a victim are not binding on the United States if circumstances creating tort liability have not been extinguished. *United States v. Moore*, 469 F.2d 788 (3d Cir. 1972) (state family immunity law); *United States v. Gera*, 409 F.2d 117 (3d Cir. 1968) (statute of limitations); *United States v. Fort Benning Rifle & Pistol Club*, 387 F.2d 884 (5th Cir. 1967) (statute of limitations).

Arguably, the shielding of owners and operators of motor vehicles from liability in the absence of a higher degree of fault could be viewed as a procedural obstacle to the enforcement of an existing right. Tort defenses that exist by virtue of statutory or judicial implementation of public policy needs have been characterized as such. *See, e. g.*, W. Prosser, Handbook of the Law of Torts, § 122 at 864–68 (4th ed. 1971) (parent-child immunity protects domestic tranquility and parental discipline). In a similar manner, a guest statute is supposed to serve the perceived public need to protect hospitable drivers and to prevent collusive lawsuits. Comment, *Equal Protection Challenges to Automobile Guest Statutes*, 8 Creighton L.Rev. 432, 448 (1974); Note, *Rationality of Guest Statute Classifications Questioned*, 53 Neb.L.Rev. 267, 269 (1974). Additionally, a guest statute creates a status between a passenger and a driver or owner that resembles certain privileged relationships.

■ Despite the similarities between a guest statute and immunity doctrines, this Court believes that the Nebraska law excuses rather than bars enforcement of liability. *Cf. United States v. Studivant*, 529 F.2d 673 (3d Cir. 1976). Nebraska's Supreme Court has consistently held that driver or owner liability does not arise unless gross negligence exists. *Calvert v. Miller*, 163 Neb. 501, 80 N.W.2d 123, 127 (1957); *State Farm Mut. Automobile Ins. Co. v. Bonacci*, 111 F.2d 412, 415 (8th Cir. 1940). A Nebraska plaintiff has the burden of pleading and proving gross negligence or intoxication under this state's guest statute. *Johnk v. Scanlon*, 136 Neb. 187, 285 N.W. 488, 489 (1939). Unlike an immunity, a statute of limitations or contributory negligence, a guest statute is not an affirmative defense which must be pleaded by a defendant. It affects the substantive rights of litigants and cannot be waived. *Fuller v. Wainwright*, 415 S.W.2d 234, 235 (Tex.Civ. App.1967); *Jameson v. Sibert*, 379 S.W.2d 86 (Tex.Civ.App.1964).

The Court feels that the cases of *United States v. Forte*, 427 F.Supp. 340 (D.Del. 1977) and *Gov't Employees Ins. Co. v. Bates*, 414 F.Supp. 658 (E.D.Ark.1975) rely excessively on *United States v. Moore*, 469 F.2d 788 (3d Cir. 1972). While both of these district court cases hold that governmental enforcement of the Recovery Act is not frustrated by an automobile guest statute, the distinction between that situation and the interspousal immunity question considered in *Moore* has already been made. In light of this Court's previous analysis, *Forte* and *Bates* are ill considered and will not be followed in this case.

The Court holds that Nebraska's guest statute limits substantive liability, and would bar the right of the United States in this case if the internal law of Nebraska is adopted as the federal rule.[18]

---

18. This holding is consistent with the character of the tort of *per quod servitium amisit*. In response to the holding of the Supreme Court in *United States v. Standard Oil Co.*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), Congress expanded *per quod* beyond the master-servant relationship by creating an independent right to recover in the government.

Typically, affirmative defenses such as contributory negligence have no bearing on a recovery right based upon *per quod*. W. Prosser, Handbook of the Law of Torts § 125 at 893 (4th ed. 1971). However, the absence of any tortious conduct at all on the part of a defendant will negate the right to recover. Prosser, § 125 at 891. Nebraska's guest statute eliminates substantive liability for ordinarily tortious acts, so

## Choice of Law

A determination that a federal rule based upon state law will govern the independent federal right does not end the analysis. Since the adoption of Nebraska law would lead to a result different from that obtained under Missouri law, the choice of a standard remains. The Court believes that a proper solution can be attained only through reference to the appropriate conflict of laws rule.

■ If federal jurisdiction extends to a case or controversy because of diversity of citizenship, a federal court must apply the conflicts rules of the forum. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The United States Supreme Court has been faced with the proposition that *Klaxon* may be applicable to some federal question cases, but the question was not answered. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 456, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 371, 65 S.Ct. 405, 89 L.Ed. 305 (1945). While some courts have flatly stated that *Klaxon* applies to federal question cases where issues of state law must be resolved,[19] it seems preferable to consider the problem from an analytical point of view.[20] The Court believes that it has three alternatives under this approach: (1) the Nebraska conflicts rule could be adopted as the federal standard; (2) the Missouri conflicts rule could be incorporated; or (3) an independent federal conflicts rule could be framed. As the ensuing review demonstrates, each possibility, if adopted, might lead to a different conclusion.

Nebraska still follows the concept of *lex loci delecti* in the area of tort law. Even when a passenger-driver relationship has originated within Nebraska, the Nebraska Supreme Court has held that the internal law of the state of the accident applies to the guest status question. *Peterson v. Dean*, 186 Neb. 716, 186 N.W.2d 107 (1971); *Cappellano v. Pane*, 178 Neb. 493, 134 N.W.2d 76 (1965); *Alesio v. Lococo*, 134 Neb. 461, 279 N.W. 154 (1938).

Missouri espouses the "significant relationship" test set forth in § 145 of the Second Restatement on Conflict of Laws. Comment, *Changes in Tort Conflict of Laws in Missouri*, 37 Mo.L.Rev. 268 (1972). In rejecting the inflexible *lex loci delecti* rule, the Missouri Supreme Court has refused to adopt a foreign state's guest statute when the location of an accident is fortuitous and the "whole relationship of the parties is centered in Missouri." *Kennedy v. Dixon*, 439 S.W.2d 173, 185 (Mo.1969).

State conflicts rules can be ascertained by reference to existing state law. Independent rules cannot be discovered so easily. More often, federal conflicts rules are fashioned to reflect the needs of federal policy.

The Court can envision a number of conflict of laws rules, any one of which could be adopted as an independent federal standard under the Recovery Act. Despite the advantages of uniformity and predictability that might accrue if such a selection were made, the purpose of this federal statute may be better served by a rejection of this alternative.

One criterion that should be weighed in the evaluation process is whether federal and state courts have concurrent jurisdiction over the federal claim. Note, *supra* n. 20 at 1228. The Recovery Act expressly provides for suit in either federal or state

recovery on a *per quod* theory would not be possible.

**19.** *See, e. g., United States v. Moore*, 311 F.Supp. 984, 985 (M.D.Pa.1970), *rev'd* 469 F.2d 788 (3d Cir. 1972); *United States v. Henke Constr. Co.*, 157 F.2d 13, 23–24 (8th Cir. 1946). *Cf. Hart and Wechsler's The Federal Courts and the Federal System* 766 (2d ed. 1973), where the authors suggest that *Erie*, and by implication *Klaxon*, apply to any issue which is governed by state law regardless of the original jurisdictional character.

**20.** The process of selecting a conflicts rule in a non-diverse case has been characterized as "a hornet's nest of open questions." *United States v. Mitchell*, 349 F.2d 94, 101 n. 5 (5th Cir. 1965). Federal courts that have faced the problem often fail to adequately analyze the process by which a solution is reached. Note, *Applicability of State Conflicts Rules When Issues of State Law Arise in Federal Question Cases*, 68 Harv.L.Rev. 1212, 1213–14 (1955).

tribunals. 42 U.S.C.A. § 2651(b)(2) (1973). Use of a state conflicts rule is favored under such circumstances, as it reflects congressional confidence that the right is capable of being vindicated under local law, as interpreted by state courts, without prejudice to any federal policy.

Conversely, some policy considerations suggest that the selection of an independent federal standard is preferable. This conclusion would be supported by the fact that this Court supplements rather than enforces an existing state right whenever a Recovery Act judgment is attained by virtue of the government's independent remedy. Note, *supra* n. 20 at 1228. While the subrogative right of the United States under the statute is created by state law, the government's independent right is a creature of federal law. This fact is not altered by congressional use of the common law tort of *per quod* as a basis for the independent remedy. The essential character of the federal right is not altered simply because the parameters of the federal right are delineated by the state law definition of "circumstances creating tort liability." The existence of a federal remedy suggests that federal interests are present and ought to be protected by a uniform, independent federal conflicts rule.

Neither of these countervailing principles is decisive in the eyes of the Court. While a federal interest was created when the Recovery Act was enacted, it is rational to conclude that the interest would not be significantly furthered by allowing federal courts to decide conflicts questions without reference to state law. In the absence of such an advancement of federal policy, resort to state conflicts rules is proper. Note, *supra* n. 20 at 1228.

A review of the purposes that motivated passage of the substantive provisions of the Recovery Act bolsters this conclusion. In enacting the statute, Congress did not intend to frame a uniform governmental basis for recovery. The Recovery Act was passed to prevent windfalls at the expense of the United States, and not to create an absolute right to recover. When a nation has acted to preserve its proprietary interests, it can be inferred that uniformity was not a significant policy consideration. In light of these factors, the Court holds that a state conflicts rule ought to be adopted as the federal standard in this case.

To say that the Recovery Act inferentially compels the adoption of a state conflicts rule does not dispose of the final issue in this motion to dismiss.[21] Under the rule in the *Klaxon* case, a federal court in a diversity situation is obliged to apply choice of law principles espoused by the state in which the federal forum is located. No such general requirement exists in federal question cases. To the contrary, some authorities have suggested that a federal court should heed the conflicts rule of the state where the cause of action arose. Hill, *State Procedural Law in Federal Nondiversity Litigation*, 69 Harv.L.Rev. 66, 100–08 (1955); *Long, supra* note 7 at 373 n. 125. *Cf.* Note, *supra* note 20 at 1215.

If this suggestion were to be applied to the facts of this case, this Court would look to the whole law of the state where the accident took place. The Missouri "significant relationship" test would presumably apply,[22] causing the internal law of Nebraska to be adopted for Recovery Act purposes. This result would differ from the outcome that would be obtained if a Nebraska state court heard the case. Under the Nebraska rule of *lex loci delicti*, reference to the internal law of Missouri would be required, and the United States could recover without proof of gross negligence or intoxication.

The problem with adopting this approach is that the result would vary depending on whether the United States filed its cause of action in state or federal court. Under the

---

21. Even under the Federal Tort Claims Act, where state law is expressly incorporated as the rule of decision, conflicts questions are troublesome. Cross, *Federal Tort Claims Act and Conflict of Laws*, 36 Miss.L.J. 1 (1964).

22. It is not clear if a Missouri court would deny recovery to litigants from Nebraska on guest statute grounds if the action were brought in the state where the injury took place. *See, e. g., Kell v. Henderson*, 26 A.D.2d 595, 270 N.Y. S.2d 552 (1966).

facts in this case, the United States would avoid guest statute difficulties by filing Recovery Act suits in a Nebraska state court. It is doubtful that Congress established concurrent jurisdiction for the purpose of affording the government an opportunity to choose the more advantageous forum. The Court believes that the *Klaxon* policy against forum shopping within a single state has significance in a Recovery Act context.

The application of *lex loci delecti* to the present case is supportable despite the fact that Missouri's "significant relationship" rule is more rational and flexible when a guest statute problem arises in state court. The defendant is correct when he argues that mechanical application of the accident state's internal law disregards the interests of the state in which the guest-host relationship arose. However, this argument disregards the fact that Nebraska has not sought to protect domestic insurance companies from collusive lawsuits that arise out of facts that occur in a non-guest statute jurisdiction.[23] Nebraska's interest in having its guest statute apply outside of its geographical boundaries must not be very strong in light of the Nebraska Supreme Court's continued adherence to the rule of *lex loci delicti*. Missouri certainly has no greater interest than assuring the exercise of reasonable care on its highways. Application of Missouri's conflicts rule would tend to "vindicate" a policy that Nebraska is not interested in promoting outside of its own borders. The Court can perceive no congressional intent to enhance or diminish existing state policy by virtue of the passage of the Recovery Act.

An Order has been filed contemporaneously herewith in accordance with this Memorandum Opinion.

---

23. It is doubtful that the policy of discouraging collusive lawsuits would be furthered by applying Nebraska's guest statute when the United States is a Recovery Act plaintiff. The limitation of damages to "reasonable medical expenses" would be one safeguard against impropriety. Treatment of a victim by government physicians who have no stake in a generous recovery would prevent collusive inflation of damages.